S. C. WALL v. WILLIAMS & ROBBINS, Ex'rs.

*Contract—Tort—Issues—Severance of trees.*

1. The plaintiff sues an executor for compensation for services rendered his testator during the latter part of his life, upon an alleged promise made by the testator. The defendant sets up, by way of counter-claim, a contract of lease between the testator and the plaintiff, under which the plaintiff entered upon the land, and in which it was agreed that the latter should have the farm for five years upon his furnishing a support to the testator and his wife; and further alleges that plaintiff has cut down the timber on the premises and sold the same for a considerable sum and appropriated it to his own use. The plaintiff, in his replication, denies the counter-claim and his liability as alleged; *Held,* error to refuse to submit an issue to the jury (tendered by defendant), as to whether, during the life time of the testator, the plaintiff cut and appropriated the timber, as alleged, and the value of the same; and also the facts involved to the alleged counter-claim.

2. *Held further,* The separation of the trees from the land converted them into personal property, but the title to them at once vested in the owner of the land.

3. Where personal property is tortiously taken and sold, the owner may waive the tort, affirm the sale, and recover upon a count for money had and received to his use.

(*Burnett* v. *Thompson,* 6 Jones, 210; *Potter* v. *Madre,* 74 N. C., 36, cited and approved.)

CIVIL ACTION tried at July Special Term, 1884, of RANDOLPH Superior Court, before *Graves, J.*

Verdict and judgment for plaintiff, appeal by defendants.

*Messrs. Scott & Caldwell,* for plaintiff.
*Mr. M. S. Robins,* for defendants.

SMITH, C. J. The plaintiff's complaint demands com-

pensation for services rendered to the testator of the defendants, a diseased and aged man of eighty years, during the latter part of his life and subsequent to the death of his wife, for which he and the guardian, into whose hands he had been committed, promised to pay.

The defendants, besides denying their testator's liability, set up in defence a covenant of lease entered into between him and the plaintiff, which they relied on as excluding any such charge and furnishing material for a counter-claim in connection with the facts alleged.

The lease is made part of the answer and is in these words:

STATE OF NORTH CAROLINA, }
      RANDOLPH COUNTY.    } .

I, Daniel Williams, of said county, agree with S. W. Wall to lease his farm to said Wall five years, and he is to furnish him and his wife plenty for to support them and furnish them with fire wood in their yard: Now the said Wall is to have possession on the 1st day of October, 1879, and to have all he can make after we get our support. I, Daniel Williams, agree to keep what provisions I have on hand on the 1st day of October, 1879, to support myself and wife, and stock, and at the end of five years, the said Wall is to furnish the same amount or leave that much with us; the said Williams is to keep one cow and calf, one or two hogs, &c. The above agreement is to be in full force the 1st day of October, 1879.

Signed in the presence of B. Milligan, and left in his possession May 9th, 1879. Witness our hands and seals.

                        DANIEL WILLIAMS, [Seal.]
                        S. W. WALL, [Seal.]

Witness: BENJ. MILLIGAN.

The answer further states that the plaintiff was let into possession of the farm in the fall of 1879 or in December of that year, and has been occupying it under the contract since:

That the testator's wife Rachael died in January thereafter and her husband surviving lived until June, 1882:

That the plaintiff has not only appropriated the rents and profits of the land to his own use, but claims a right to do so during the full term of five years, and has cut, hauled away, sold and converted to his own use, timber growing upon the premises of the value of five hundred dollars or more; and, that he has never accounted for any portion of the rents and profits, nor for the timber cut and disposed of, nor for the value of the provisions that passed into his hands when he entered into possession, and which he was to replace when the lease expired.

The plaintiff's replication denies the counter-claim or his liability upon any of the matters set out in the answer.

The plaintiff tendered the following issues to be submitted to the jury:

1. Did the plaintiff render the services claimed in the complaint?

2. Were such services rendered at the request of the testator or of any one authorized to make such request?

3. What was the value of such services?

Without objecting to these, the defendants offered others also to be submitted, to-wit:

1. Did the plaintiff at the time he took charge of the testator enter into the contract set up in the answer with the understanding that the rents and profits embraced in the contract should compensate him for what he should do for the testator and his wife?

2. What was the rental value of the land?

3. Did the plaintiff cut and appropriate to his own use, during the testator's life timber growing on the land?

4. If so, what was the value of the timber so cut and applied to plaintiff's use?

5. Was any property of the testator taken possession of by the plaintiff when he entered upon the land, for which he was to account under the contract, and has not accounted?

6. What was the value of the property so taken and used?

These six issues, on plaintiff's objection, were ruled out, and only the three first submitted to the jury, in all of which the findings were in favor of the plaintiff, and he had judgment, from which the defendants appeal.

The first and second of the rejected issues were properly refused as involving a parol addition to or explanation of the terms of a written contract, which is wholly inadmissible.

The fifth and sixth issues encounter the same objection, in that, they embrace matters specially provided for in the covenant, and for which the plaintiff was to account at the expiration of his term.

The third and fourth issues, if found in the affirmative, do show a counter-claim which the defendants have a right to use in reduction of plaintiff's demand.

The defendants allege in their answer a severance of trees from the land and a sale and conversion of them to the plaintiff's own use, which we take to be the inquiry which the court refused to make of the jury, contained in the rejected issue.

The separation of the trees converted them into personal property, and the title to them at once vested in the owner of the inheritance.

This, as remarked by the late Chief Justice in *Burnett* v. *Thompson*, 6 Jones, 210, if there be tenant for years or for life, and a stranger cuts down a tree, the particular tenant may bring trespass and recover damages for breaking his close, treading down his grass and the like. But the re-

### WALL *v.* WILLIAMS.

mainderman or reversioner in fee is *entitled to the tree,* and if it be converted may bring trover and recover its value. The reason is the tree constitutes a part of the land; its severance was waste which is an injury to the inheritance; consequently the party in whom is vested the first estate of inheritance, whether in fee simple or fee tail, (for it may last always) is entitled to the tree as well after it is severed as before, his right of property not being lost by the wrongful act of severance by which it is converted into a personal chattel. Such remainderman or reversioner has his election either to bring trover for the value of the tree after it is cut, or an action on the case, in the nature of waste, in which, besides the value of the tree considered as timber, he may recover damages for an injury to the inheritance, which is consequent upon the destruction of the tree.

So in *Potter* v. *Madre,* 74 N. C., 36, where the husband of one entitled to an estate in dower in the descended lands of a former husband, cut down timber and built from the material a canoe which the reversioners obtained possession of under unauthorized proceedings, and thereupon the plaintiffs brought their action against the reversioners. Delivering the opinion RODMAN, J., says: The plaintiff had a right to cut trees for the necessary repair of the farm buildings, but none to cut trees for building a boat to be used for fishing. When the trees were felled, *the property in them vested at once in the reversioners,* who could have maintained trover, or by our statute, replevin, and could have recovered for so much as the plaintiff could not show that he had applied to a lawful purpose, such as the repair of the buildings, &c. These propositions were resolved in *Bowles case,* 11 Rep., 79, and have been recognized as law ever since.

It is equally well settled that where the personal property of another is tortiously taken and sold, the owner may waive the tort, affirm the sale, and recover the moneys re-

31

ceived from the wrong-doers, as moneys received to the plaintiff's use.

When the defendant has tortiously taken the plaintiff's property and sold it, or being lawfully possessed of it, has wrongfully sold it, the owner may ordinarily *waive* the tort and recover the proceeds of sale under this count, (for money had and received to the plaintiff's use). 2 Greenl. Evi., § 120.

The same proposition is announced by another author in these words: Although it is not in all cases, where a party has converted the goods of another to his own use, that the tort may be waived and the transaction changed into a contract for goods sold and delivered, yet if the goods be converted into money, the *plaintiff may waive the tort* and recover the money. 1 Steph., N. P., 286; 1 Wait. A. & D., 405, 407; *Hallock* v. *Mixer*, 16 Cal., 574.

But we are not entirely satisfied that the service rendered and attention bestowed upon the testator, during the period he survived his wife, are not comprehended in the plaintiff's undertaking " to furnish him and his wife plenty for to support them" during the lease if they so long live; and if so, the promise to pay would be without consideration. The performance of a legal duty cannot be a consideration for a promise to perform that duty, as the promise does not add to the existing obligation.

Are not the service and attention incident to their being supported, though in the present case they were far more onerous than perhaps ever contemplated by either party. Would a total neglect of their most common wants when living on the same farm be consistent with their agreement for a support to be afforded by the plaintiff? Is the word to be construed as restricting the contract to the furnishing of food merely, and fuel for cooking and warmth?

Is it to be taken as the expressed intent of the parties that the plaintiff should have the use of the premises for

five years, as under the lease he is clearly entitled, with no obligation assumed beyond the supply of food and fuel to the aged husband and his wife? These obnoxious considerations embarrass us in giving so limited a meaning to the word as to let in a claim to any, the smallest, service to be rendered.

But we forbear to express any decisive opinion upon the point, as it is not necessary in passing upon the exceptions brought up by the appeal.

For the error pointed out in refusing to submit to the jury the facts involved in the alleged counter-claim, there must be a new trial. To the end that a *venire de novo* be awarded, let this be certified.

Error. *Venire de novo.*